# Leeds *v.* Perpetual Building and Loan Assn., Appellant.

*Building and loan associations—Equitable interest in stock—Pledge—Notice—Misapplication of stock.*

Where a building and loan association has through its solicitors full knowledge of an outstanding equitable interest in its own stock which has been pledged for a debt with the equitable owner's consent, and the association as pledgee, without the consent of the equitable owner, and at the direction of the person in whose name the stock stands misapplies the pledged stock, the association will be liable for such misappropriation, and the Act of May 5, 1911, P. L. 130, will not protect it from such liability.

In such a case the building and loan association is guilty of a misappropriation, if it forecloses the mortgage for which the stock was specifically pledged, and from the proceeds of the sale of the real estate retains an amount equal to the surrender value of the stock on which the equitable owner had paid all the fines and fees, in order that it might apply the amount of such surrender value to the payment of an entirely different loan made by the association to the person in whose name the stock in question stood.

Argued Oct. 12, 1915. Appeal, No. 41, Oct. T., 1915, by defendant, from judgment of Municipal Court of Philadelphia Co., July T., 1914, No. 397, on verdict for plaintiff in case of Horace W. Leeds, Trustee of the Bankrupt Estate of Lewis J. Matthias v. Perpetual Building and Loan Association. Before RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ. Affirmed.

Assumpsit for money had and received. Before CRANE, J.

The facts are stated in the opinion of the Superior Court.

The court charged in part as follows:

As the court recollects the testimony, there was a property at No. 6217 Jefferson street which was mortgaged by the plaintiff in this case in the defendant's building and loan association for the sum of $5,000.00.

Now, if that were all that was in the case, it would be a very simple matter for you to decide the case, but in the course of time there were defaults made in the payment for the stock or shares in this building and loan association and instead of a suit being brought for the balance due upon the stock, there was a foreclosure of the mortgage and it was testified here that there was a certain payment made, under which payment the building and loan association received or rather the attorneys as agents for the building and loan association received a sum of money amounting to $5,648.89, that money being turned over to the attorneys Messrs. Bernheimer & Sundheim by the sheriff of the County of Philadelphia. There was subtracted from that amount the money due the attorneys for their fees in connection with the foreclosure proceedings, or an amount of $250.00, which left a balance of $5,398.89.

Now, under the rules of this association, when a man applies for a loan of money on a property, it becomes necessary for him to take out shares of stock in that association and in this particular case, the testimony was that there was twenty-five shares of stock taken out but the shares of stock instead of being taken out in the name of plaintiff, they were taken out in the name of Harry P. Katz, and that testimony is what makes your consideration of the facts in this case a very difficult one.

It appears further from the evidence that on the twelfth day of May, 1913, there was due and payable on this loan a total of $487.33, and it further appears that on the twelfth day of May, 1913, those twenty-five shares of stock had a surrender value, amounting to $433.50. Therefore, when this stock was cancelled, and it was cancelled, if our recollection of the testimony is correct, on the twelfth day of May, 1913, there was due to the association on this contract the sum of $5,000.00 together with the unpaid premiums on the stock and the interest and the penalties amounting to the sum of $487.72, which added to the debt $5,000.00 makes a total of $5,487.72.

The $487.72 is made up in this way: On March 11, 1913, there was due for unpaid premiums on this stock—and you gentlemen have heard that these premiums are due at the rate of one dollar monthly per share—on that date there was due $175.00; then there was due for arrears of interest $175.00, and for arrears of fines $29.14, making a total of $379.14 due on the stock for that date and up to and including May 12, 1913, the day when this stock was cancelled, there were additional dues or premiums on the stock amounting to $50.00. There were additional sums due for interest amounting to $50.00 and there was due for fines $4.29, that is fines on account of the dues $4.29 and fines on account of the interest $4.29, making the total amount due $487.72.

As we have already stated that would make a total indebtedness at the time when these mortgages and stock was cancelled, $5,487.72.

We do not wish to confuse you gentlemen with figures, but we feel it is somewhat necessary to review the testimony. At the time this stock was cancelled, it had what is known to building and loan association officers and stockholders as a surrender value and that surrender value was $433.50. Therefore, in order to ascertain the total amount due to the association we first take the amount of the mortgage of $5,000.00 and add to that the total amount of indebtedness for unpaid premiums, dues and for penalties, and that makes, as we have said before, $5,487.72, and from that amount, in order to ascertain the exact amount due the building and loan association, the defendant in this case, we subtract the surrender value of the shares, or $433.50, and the balance, if the court recollects the testimony correctly, was $5,054.22, the total indebtedness. The property was sold by the sheriff and the sum realized was turned over by him to the agents of the association or the solicitors, and that amount was $5,648.89, from which amount there was allowed an attorney's fee of $250.00, leaving as a result of the sheriff's sale on the foreclosure of that mort-

gage on the property or premises No. 6217 Jefferson street, $5,398.87. From that amount, which is the total amount realized under the foreclosure of this mortgage, we have subtracted the total amount of indebtedness due the corporation, the Perpetual Building and Loan Association, the defendants in this suit, $5,054.22, and the difference between those sums is $344.65, and that is the amount for which suit is brought by reason of the fact that it is alleged in these procedings that the building and loan asociation had made a profit out of the sale of that house, belonging to the plaintiff in this case, in the sum of $344.65. Now, gentlemen, you have heard all of the testimony and it is for your consideration.

The defense, as we recollect the testimony, is that this man, Mr. Matthias, the plaintiff in the case, who has since gone into bankruptcy, and you will remember that this suit is brought by the trustee in bankruptcy, who is properly appointed by the court and is qualified to collect the assets of the bankrupt. The testimony is that this man, Mr. Matthias, the plaintiff, put up the building operation on Jefferson street, and that he was in very serious financial difficulties—the defendant tells you that all these various properties were mortgaged up to and perhaps were in excess of their actual value and that when the proposition was made to the defendant for a loan upon these properties, the building and loan association refused any credit to Mr. Matthias, the plaintiff here, and they would only extend a credit here on the bond or the obligation in writing of two persons who were mentioned, one was named Katz and it appears further from the evidence, that the stock in question, twenty-five shares, which were taken in this association, apparently for securing this loan, were in the name of the man Katz.

It is for you to determine who is the owner of this stock. Who is entitled to that $344.65? The defendant further tells you that Harry P. Katz, who is the man to whom he has already referred, and another man, Mr.

William Abrahams, had already or were about to borrow the sum of $13,000.00 from this building and loan association; that they borrowed the sum of $4,000.00 on one property on Jefferson street, that they borrowed a like sum for another property on Jefferson street and they borrowed $5,000.00 on the property No. 6217 Jefferson street.......

The defendant further tells you that at the time of this sheriff's sale there were certain unliquidated amounts as between Harry P. Katz and the man named Abrahams and the Perpetual Building and Loan Association. While it is true that the sum for which this house at No. 6217 Jefferson street was sold, was in excess of the mortgage upon that house, they applied the excess to the payment of the obligations owed to the building and loan association by Harry P. Katz— that testimony is also before you for your consideration.

There has been in evidence here the dates when the various stock was issued and to whom it was issued and also dates when the various stock was cancelled. You have also heard all of the evidence as to the three separate mortgages for the properties on Jefferson street and you have also heard the evidence more particularly as to the mortgage upon the property belonging to the plaintiff, No. 6217 Jefferson street. Now, gentlemen, did the building and loan association know that Harry P. Katz was merely a straw man as the plaintiff tells you here? Did the plaintiff in this case pay the premiums upon the stock issued in the name of Harry P. Katz? Those are questions of fact and are exclusively questions for you to decide.

[If you find that the plaintiff in this case paid the premiums upon that stock and that it was his property upon which the mortgage was placed, then the court instructs you that in itself is sufficient to give the plaintiff in this case what is called a beneficial ownership in this stock, and if you believe the plaintiff in this case had

a beneficial ownership in this stock, and if you believe
that knowledge was conveyed in some way, in writing
or by word of mouth to the defendants in this case,
then the court instructs you that it became the duty of
the defendants in the distribution of the assets from
the sale of this particular house, No. 6217 Jefferson
street, to make such a distribution of the funds as would
give to the beneficial owner of that stock, if any, such a
surplus as existed after the payment of the various sums
due to the defendants.]   (8) If you believe there was a
surplus derived from the sale of this property, No. 6217
Jefferson street, after all such indebtedness was paid,
then the plaintiff would be entitled to that.   But, if you
believe, on the other hand, that the plaintiff in this case
had no beneficial ownership in this stock; that is to say,
if he did not pay anything on the dues, the premiums and
the fines, then your verdict will be for the defendant.   On
the other hand, if you believe that the plaintiff in this
case had a beneficial ownership in this stock, that he did
pay the dues and premiums, but that distribution of the
funds arising from the sale of this property was made by
the defendant company or its authorized agents without
knowledge on their part as to this beneficial ownership,
then your verdict will be for the defendant.   Was the
distribution of the assets from the sale of this property
made before the agents of this defendant company
learned of any beneficial ownership in the plaintiff in
this case as to these twenty-five shares of stock or was
it afterwards made?   Those are questions of fact for
you and it is for you to determine as to all of the facts
by the evidence which has been submitted.

You have the check which has been offered here from
the Real Estate Title Insurance and Trust Company of
Philadelphia, showing that certain mortgages were to
be satisfied upon the receipt of that check.   You have
also all of the various letters two of them at least from
the solicitors of this building and loan association to
the plaintiff in this case, and those letters are for your

consideration also.  It is for you to determine whether or not from all of the evidence in this case this surplus of $344.65 derived from the sale of that property, No. 6217 Jefferson street, belonged to the plaintiff under the law and under the instructions of the court or whether under the law and under the instructions of the court the defendant company had a right to apply that balance or surplus to the satisfaction of other indebtedness as owed by Harry P. Katz, who was at least the nominal owner of that stock, and in determining that, you will first decide who was the beneficial owner of that stock and then you will decide what knowledge, if any, the company had as to that beneficial ownership.

We are asked by the plaintiff to charge you as follows:

"3. If the amounts paid as dues upon the twenty-five shares represented by stock certificate 1399-C were paid with money belonging to Lewis J. Matthias, then Lewis J. Matthias was the beneficial owner of these shares, subject to the interest of Perpetual Building and Loan Association, as pledgee thereof."

Answer: That point is affirmed.  (4)

"4. If Bernheimer and Sundheim knew that Lewis J. Matthias was the beneficial owner of the twenty-five shares represented by stock certificate 1399-C and of 6217 Jefferson street, then Bernheimer and Sundheim had no right to apply the surplus from the sheriff's sale of No. 6217 Jefferson street and from the surrender value of these shares to any purpose for which the shares had not been expressly pledged."

Answer: That point is affirmed.  (5)

"5. If the board of directors of Perpetual Building and Loan Association has never authorized the application of either the surrender value of the twenty-five shares represented by stock certificate 1399-C or the proceeds from the sheriff's sale of 6217 Jefferson street to any purpose, then in the eyes of the law the surplus remaining after paying in full the $5,000.00 loan on certificate 1399-C is still in the hands of the Perpetual Building and Loan Association."

Answer: That point is affirmed.  (6)

Verdict and judgment for plaintiff for $353.63.  Defendant appealed.

*Errors assigned,* among others, were (3) in refusing binding instructions for defendant (4, 5, 6-8) above instructions quoting them, and (7) as follows:

"The learned trial judge erred in admitting the evidence as to the custom of issuing stock in building and loan associations."

*Joseph H. Sundheim,* of *Bernheimer & Sundheim,* for appellant.

*Walter C. Longstreth,* for appellee.

Opinion by Kephart, J., December 20, 1915:

The facts in this case are somewhat complicated.  Appellee secured from the appellant building and loan association, a loan on his property, No. 6217 Jefferson street, Philadelphia, and gave therefor his mortgage. The certificate of stock which was the basis of the loan, was issued without consent of the appellee in the name of Katz, an obligor on a collateral bond.  This collateral bond was given to secure the payment of appellee's mortgage, and two other mortgages assigned to the appellant building and loan association by Katz.  The bond was joined in by one Abrahams, who was interested in this financial transaction.  The appellee did not have title to the premises covered by these two mortgages assigned by Katz.  Upon default in the payment of the monthly installments, the mortgage on the appellee's property was foreclosed by the appellant.  In entering judgment no credit was given appellee for the surrender value of the stock standing in Katz's name.  Appellant received from the sale of the mortgaged premises the full amount of the mortgage debt, delinquent fines, dues, and interest.  This suit was brought by the appellee as the owner

to recover the surrender value of the stock.    Katz had pledged it as collateral for appellee's loan and after the foreclosure sale it had been cancelled at the direction of Katz without the knowledge or consent of the appellee. All the dues, fines and charges on account of the stock had been paid by the appellee either directly or in the sale of the mortgaged premises.    The appellant association retained the surrender value of this stock, as their solicitors say, for the protection of the obligors on the collateral bond above mentioned. '

Appellant endeavors to avoid liability for this surrender value by asserting.

(1) That it had no notice of the appellee's beneficial or equitable interest in the stock.    When the appellee's loan was contracted, the solicitors, who had general control, were the duly authorized agents of the association. They examined the titles, prepared all papers in connection therewith, and received through other transactions the money that was applied on the monthly settlements on account of the loan and stock.    They made all the adjustments in connection with the loan;  they knew in what manner the stock had been issued, the rules governing their association with reference to the issuance of stock, and that the appellee was entitled to this stock unless he had agreed that it might be otherwise issued.    His money paid the dues on the stock. With all this knowledge and with their undoubted authority from the company, the association cannot now be heard to say that they had no knowledge of the appellee's beneficial interest.    Where a pledgee has full knowledge of an outstanding equitable interest in stock which has been pledged for a debt with the equitable owner's consent, and the pledgee, without the consent of the equitable owner and at the direction of the person in whose name the stock stands, misapplies the pledged stock, the pledgee will be liable for such misappropriation and the Act of May 5, 1911, P. L. 130, will not protect the pledgee from such liability.

(2) The primary liability for the two mortgages assigned by Katz, an obligor on the collateral bond, to the building and loan association, was the property covered by the mortgages, the title to which was never in the appellee. The appellant issued forty shares of stock to Katz on account of these loans. These properties were sold by the sheriff at the suit of a second mortgage creditor and purchased by that creditor. When a default was made in the monthly payments on account of the two mortgages, which were still liens against the mortgaged premises, and a settlement was made prior to the payment of these two mortgages, the surrender value of the stock issued to Katz was rightly applied to the indebtedness due the association as created by Katz. Katz was liable under his contract with the association at least to the extent of this surrender value of this stock which he had assigned to the association as collateral. This real estate was subsequently conveyed to Abrahams, the other obligor on this collateral bond, and at the same time the two mortgages were paid in full by a trust company check. At no time does it appear from the record that either of these obligors were compelled to pay any money on account of the collateral bond. Had they paid any money on account of the loans it would have been because they were debtors under the original undertaking which brought this appellant into the transaction, or as the owners of the real estate mortgaged, in relief of the encumbrances for which it stood as primarily liable. It is clear, therefore, assuming that the appellee could have been held as a joint obligor, this appellant could not withhold from him the surrender value of his stock to apply it on a supposed liability arising from the collateral bond where none in fact ever existed. When, by payments and the sale of the appellee's property under his own mortgage, without any deductions for the surrender value of his stock, appellee's debt was paid in full, the purpose for which appellee's stock was pledged was fully accomplished. The stock should have been returned

to him in kind. While it is true that a creditor cannot release a part of the property held as security, without discharging a surety, the surety in this case was discharged from all liability as to this particular debt when it was paid, and the appellee's stock here in question, having been specially pledged for that particular debt, was thereupon released. It could not be held pending the determination of a possible liability on a collateral undertaking for which it was in no sense pledged. Appellant might have deducted this surrender value from the debt due by the appellee on his mortgage. Had the association done so it would not have received from the sheriff the sum of money that it did. It saw fit to disregard this surrender value and liquidated its claim without considering it. When they, without authority, afterwards cancelled the stock and held its value to be applied as herein indicated to a possible liability on some other transaction, it committed an act in violation of the pledgor's rights, and is therefore liable for the value of the stock. The time when each of these several transactions took place occurred long enough before this suit was brought to have permitted a settlement with the appellee.

The case was fairly presented by the trial court in a charge free from substantial error. The seventh assignment is not according to the rules of this court. The assignments of error are all overruled and the judgment is affirmed.